### H. L. BURLESON v. WILLIAM C. LANGDON.[1]

April 13, 1928.

No. 26,566.

**New promise to continue or revive a cause of action applies in contract but not in tort.**

1. The effect of a new promise as an agency for the continuance or revival of a cause of action operates only in the field of contractual obligation and does not apply to a cause of action in tort.

**Injured party in conversion has cause of action in trover alone against wrongdoer not enriched by the tort.**

2. While in case of conversion the injured party may sue any active participant in the wrong, yet, as against a wrongdoer who has not been himself enriched by the tort, the plaintiff has only the cause of action in trover. He cannot resort to an action, in the nature of indebitatus assumpsit, on the quasi contractual obligation which would have arisen had the defendant been himself enriched by the conversion.

[1]Reported in 219 N. W. 155.

**Where there is accord and satisfaction and creation of new liability in contract, it is dischargeable in bankruptcy.**

3. It follows that where, in such a case, notes are taken from a wrongdoer who was not personally enriched by the tort, wherein he is joined by others as comakers, there is an accord and satisfaction and the creation of a new liability resting in true contract. As such, it is dischargeable in bankruptcy.

Accord and Satisfaction, 1 C. J. p. 567 n. 41.
Actions, 1 C. J. p. 1033 n. 24.
Bankruptcy, 7 C. J. p. 397 n. 96.
Limitations of Actions, 37 C. J. p. 1097 n. 45; p. 1098 n. 48.
Trover and Conversion, 38 Cyc. p. 2055 n. 31.

See note in 21 A. L. R. 1059; 17 R. C. L. 894; 4 R. C. L. Supp. 1160; 5 R. C. L. Supp. 960.

Plaintiff appealed from a judgment of the district court for Hennepin county, Baldwin, J. Affirmed.

*Todd, Fosnes & Sterling, Richard Converse* and *Johnson & Simons,* for appellant.

*Fowler, Carlson, Furber & Johnson* and *Wendell Hertig,* for respondent.

STONE, J.

In this action on a series of promissory notes, aggregating in principal $5,082.45, defendant had judgment and plaintiff appeals.

The case is here on a bill of exceptions, duly certified to present "all the proceedings had at the trial." The judgment was in fact ordered upon the pleadings supplemented by certain concessions and admissions by counsel. To the granting of the motion for judgment, plaintiff excepted. The record was made with the intention of presenting the questions about to be discussed. Nothing more need be said with respect to certain technical objections raised in argument.

The execution and delivery of the five notes for a valuable consideration in July, 1914, is admitted. They matured, one on January 1 each year from 1920 to 1924, inclusive. The answer pleads

defendant's discharge in bankruptcy. Admitting that discharge, the reply seeks to show that the debt was not dischargeable under 11 USCA, § 35, the material provisions of which are:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (second) are liabilities for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another, * * * or (fourth) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

The substance of the reply is that plaintiff had placed with a corporation, engaged in a brokerage and investment business, considerable sums of money for investment, of which $5,185.85 was wrongfully converted by the corporation; and that defendant, as a large stockholder and managing officer of the corporation, actively participated in the conversion. It is not charged that he was personally enriched, but instead that the money was used "in payment of corporate obligations." It is alleged further that, the corporation becoming insolvent and defendant recognizing his personal obligation to plaintiff, "voluntarily made, executed and delivered" to plaintiff the notes sued upon "for the purpose of stating and evidencing" his civil liability on account of the conversion. The notes are in fact the joint and several notes of defendant and two comakers not parties to this action.

The argument for plaintiff is that defendant's liability on the notes is one for a wilful and malicious injury to property and so not dischargeable in bankruptcy under the statute. We assume, without deciding, that the original conversion of plaintiff's funds might have made a case of that kind within the rule of McIntyre v. Kavanaugh, 242 U. S. 138, 37 S. Ct. 38, 61 L. ed. 205. We need not determine whether the original debt, in addition to the character just assumed for it, was also one created by the fraud of defendant while acting as an officer or in a fiduciary capacity. Defendant as an individual was not a trustee for plaintiff. The corporation was, but inasmuch as defendant's original and personal

liability in tort was not that of a delinquent officer to his corporation, the cases cited for plaintiff at this point, typified by Bloemecke v. Applegate (C. C. A.) 271 F. 595, are of doubtful application.

1. The complaint declares upon the notes without mention of antecedent tort or other history. For convenience of discussion they may be treated as one cause of action. The complaint shows it purely and exclusively contractual, in point both of origin and present substance. The reply does not attempt to substitute the original tort (long since outlawed) as the cause of action. That would be a departure and not permissible. Strauch v. Flynn, 108 Minn. 313, 122 N. W. 320. The effort is rather so to connect the notes with the original tort as to make them, in effect, not the source and expression of a new but merely a means of continuing an original liability. The argument is that "taking [the] notes after discovery of the wrong did not waive the wrong or change the character" of the original indebtedness—that the initial cause of action for conversion has somehow or other survived and now exists in the notes.

That argument is untenable. A new promise as an agency for the continuance or revival of a cause of action operates only in the field of contractual obligation to save a remedy as against the bar of a statute of limitation. It has never been applied to a cause of action for tort. Olson v. Dahl, 99 Minn. 433, 109 N. W. 1001, 8 L.R.A.(N.S.) 444, 116 A. S. R. 435, 9 Ann. Cas. 252; Nelson v. Petterson, 229 Ill. 240, 82 N. E. 229, 13 L.R.A.(N.S.) 912, 11 Ann. Cas. 178; 17 R. C. L. 894. That being the law, we need not stop to determine how accurate or how well supported is the statement that "an implied promise arising out of a tort  *  *  *  may be renewed by an acknowledgment or a new promise." 37 C. J. 1098.

2. An unliquidated tort liability may be consideration for a contract to pay. Defendant's notes are such a contract, and our problem is to find how, if at all, their origin prevents the discharge in bankruptcy of the debt they evidence. The argument is that plaintiff, when his money was converted, had an election of remedies; that he could have maintained trover or, waiving the tort,

had a cause of action on an "implied promise" to return the money; and that this latter obligation is the one now evidenced by the notes.

An action not upon any promise at all but upon the quasi contractual obligation to repay his money would have been open to plaintiff, but only against the corporation which had been enriched by the conversion. That this defendant participated actively in the tort doubtless made him liable in trover. Melady v. South St. Paul L. Exch. 142 Minn. 194, 198, 171 N. W. 806. Notwithstanding, and so long as he was not himself enriched by the conversion, he was not originally liable otherwise. He could not have been held on a quasi contractual obligation in the nature of an indebitatus assumpsit.

Professor Street (3 Foundations Legal Liability, 197) concludes correctly "that the duty upon which the implied contract is here predicated is a duty to disgorge the proceeds of an unlawful acquisition, and not upon the mere general duty to compensate for injury done. From this it follows that in actions of this kind the plaintiff can recover of the defendant only so much as he has actually received." Another learned and original text writer was of the same opinion. It is true, he said, "that you cannot sue in assumpsit a person who commits an assault and battery, while you can sue in assumpsit one who steals your goods and sells them. * * * In the one case there is no enrichment, in the other there is; hence in the one case your remedy is in tort only, while in the other you can sue in quasi-contract." Keener, Quasi-Contracts, 163. The cases abundantly support the position taken by these authors.

Whether, in case of tort, there has been also an elective remedy on quasi contract, in the nature of an action for money had and received, has frequently arisen in bankruptcy law. In Crawford v. Burke, 195 U. S. 176, 25 S. Ct. 9, 49 L. ed. 147, there was conversion with enrichment of the converters and in consequence a right to elect the remedy in quasi contract, upon which was put the decision that the claim was provable in bankruptcy and so discharged. But in Schall v. Camors, 251 U. S. 239, 251, 40 S. Ct. 135, 64 L. ed. 247, a contrary result was reached because the claim was for "pure tort," and there had been no enrichment of the tortfeasor out of which

to make "a provable claim quasi ex contractu." So in Stalick v. Slack (C. C. A.) 269 F. 123, the holding was that while, if a bankrupt has been enriched by his embezzlement, the owner may waive the tort and prove his claim on the quasi contractual duty to make good the loss, yet if he elects to disavow "any contract" and claim damages for the tort, his claim is not provable. In Reynolds v. New York Trust Co. (C. C. A.) 188 F. 611, 39 L.R.A.(N.S.) 391, the right to waive the tort and sue in quasi contract was held not to fail because the property is consumed rather than converted into money. But it was held also that that theory did not reach an individual partner who had not been personally enriched through a conversion by his firm. Crawford v. Burke, 195 U. S. 176, 25 S. Ct. 9, 49 L. ed. 147, was followed in Tindle v. Birkett, 205 U. S. 183, 27 S. Ct. 493, 51 L. ed. 762, the decision being that where fraud was waived and the debt proved in contract, the creditor was barred by the debtor's discharge. But in Friend v. Talcott, 228 U. S. 27, 33 S. Ct. 505, 57 L. ed. 718, it seems to have been established that a creditor having a claim based on fraud may, if he has the election, prove his claim on contract, participate in his debtor's estate, and then notwithstanding his discharge sue him for the original wrong, in that case deceit. But that ruling has no effect where, as here, the plaintiff's case is not put upon either the initial wrong nor upon any quasi contractual obligation springing from it, but instead upon an entirely new and express contract, subsequently made and itself bearing no taint of fraud or other wrong.

3. Having seen that defendant's initial liability in trover was not saved or continued by the notes, and that there was never any quasi contractual liability to be saved or continued, it must be that a new liability, one of express contract and nothing else, was created by the notes, which are not those of defendant alone but of himself and two comakers. The amount of the debt in tort was first agreed upon, possibly at a slight reduction. That was an accord. The delivery and acceptance of the notes was satisfaction. The whole became an accord and satisfaction and so extinguished the original claim in tort. Ward v. Allen, 138 Minn. 1, 163 N. W. 749; 1 R. C. L. 201. Nothing else appearing, the giving of the

notes alone would have been prima facie evidence of a settlement. Wakefield v. Spencer, 8 Minn. 336 (376). But more does appear in that it is pleaded that the notes were given for the purpose of stating the "civil liability" of defendant to plaintiff. The only liability there could have been, outside of the notes, was in tort. So we must construe the reply as pleading expressly that the notes were given in settlement of that liability. Accordingly there is no escape from the conclusion that the liability in express contract superseded and extinguished that in tort.

The present and only obligation is the ordinary one of express contract to pay money and not at all the original liability in tort. Plainly it was not created by defendant's original wrong but by his express contract. Therefore his discharge in bankruptcy was operative upon it.

The cases cited for appellant are in the main not to the contrary. Among them is Zimmern v. Blount (C. C. A.) 238 F. 740, where the declaration upon a promissory note was amended to declare also upon a cause of action for deceit which induced the loan evidenced by the note. The holding was that the plaintiff had the right to proceed simultaneously upon the note and for the tort and to reply, to a plea of discharge in bankruptcy, that the debt sued on was for obtaining money by false pretenses. We have here no such dual complaint declaring on both tort and express contract. In In re Harber (C. C. A.) 9 F. (2d) 551, 552, a judgment was held discharged because it was for the amount of a purchase price reserved to the judgment creditor by express contract. "It awarded judgment for that amount, and not for the injury" to property which was the basis of the attempt to put the judgment beyond the reach of discharge. Neither in Swift & Co. v. Bullard & Son (D. C.) 3 F. (2d) 814, nor any controlling federal case brought to our attention is there even an implication that a liability on express contract is not subject to discharge by reason of the fact that it was the result of an accord and satisfaction of a previous liability which would not have been the subject of discharge. In Thompson v. Judy (C. C. A.) 169 F. 553, 555, it was held that where there was a claim for fraud of such a nature that it would not be dis-

chargeable, that quality would attend a judgment upon it. That was because, in the language of the court, "the rights of the parties are established," and were "in no wise diminished" by the judgment, and it is often necessary to go behind it and see upon what liability it is founded to the end that the characteristics of the cause of action may be impressed upon it. The liability evidenced by a judgment is the old obligation put in different and final form. The judgment ascertains and confirms but does not create the debt. But a contract which by accord and satisfaction settles a similar demand in no wise fixes or continues the old liability. Rather, as we have seen, it extinguishes that and substitutes a new one of very different kind. The latter is not created by the tort nor by any of its legal consequences. The tort may be its occasion but not its source. It is created solely by contract. Where it is for the payment of money, it is a debt based on contract and nothing else. It follows that, whatever character be assumed for the participation by this defendant in the original wrong of the corporation of which he was an officer, the liability of himself and his comakers upon the notes here in suit is not one for wilful and malicious injury to the person or property of plaintiff nor was it created by his fraud, misappropriation or defalcation.

There is a plain distinction between notes given after an accord and in satisfaction of an unliquidated claim in tort and such as are themselves the direct issue and result of a tort (for example those procured by deceit) or those which are given, for its precise amount, in ordinary settlement or conditional payment of a liquidated tort demand. The former create a new cause of action and a debt theretofore nonexistent. The latter, on the other hand, may be regarded as but the expression and evidence of the old debt and so identified with it. That is the theory of decision in Argall v. Jacobs, 87 N. Y. 110, 41 Am. R. 357, and Gregory v. Williams, 106 Kan. 819, 189 P. 932. In the latter case Strauch v. Flynn, 108 Minn. 313, 122 N. W. 320, is criticized as being not convincing in reasoning and incorrect in result. In the writer's judgment it is open to question to the extent that the decision does not recognize

that the reply held bad could well have been construed as pleading that the very debt sued upon, although evidenced by the note, was created by the defendant's fraud. But that is not this case, for here the notes express an obligation created by express contract, which was independent of and not tainted by the antecedent tort.

Judgment affirmed.