Robert M. LARSEN, Appellee,

v.

Einar C. ERICKSON et al., Appellants.

No. 76–1283.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 15, 1976.

Decided Feb. 1, 1977.

John P. Clifford, Minneapolis, Minn., for appellants; Gerald M. Singer, of Meshbesher, Singer & Spence, Minneapolis, Minn., on brief.

David A. Ranheim, Minneapolis, Minn., for appellee; Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., on brief.

Before HEANEY, ROSS and STEPHENSON, Circuit Judges.

ROSS, Circuit Judge.

This diversity case comes before us from an order of the district court granting summary judgment to plaintiff Robert Larsen. We reverse and remand for further proceedings.

Larsen, a resident of Minnesota, brought this suit to recover $150,000 plus interest on a note executed by the defendants.[1] Larsen is the payee under the terms of the note. The note was executed on August 25, 1974, and was made payable on demand subsequent to January 24, 1975. On May 21, 1975, Larsen demanded that payment be made on or before May 28, 1975. Payment was refused.

In the court below, the defendants did not contest the execution, delivery or the terms of the note. Instead, the defendants claimed that they entered into an oral agreement with the plaintiff on May 28, 1975, which provided in part for discharge of the debt. The oral agreement allegedly involved the purchase by defendant Erickson and others of a certain Nevada mining operation, described as the Ely Mill, and other properties. The purchase price was $1,200,000. The defendants claimed that the oral agreement constituted a novation or accord and satisfaction of the debt on the note.

Larsen moved for summary judgment in the court below. In his affidavit, Larsen claimed that no oral agreement was ever made discharging the obligation on the note. He further claimed that no payment was ever made on any alleged oral agreement. Larsen also submitted the affidavits of two business associates to the effect that no agreement was reached on the sale of the mill and that no payment was ever made by the purchasers on the alleged contract.

The defendants controverted Larsen's version of the facts. Defendant Erickson filed an affidavit stating that on May 28, 1975, he personally participated in a meeting with three of Larsen's business associates in Las Vegas, Nevada, at which an agreement was reached for the sale of the Ely Mill and other properties, including discharge of the $150,000 obligation. Erickson stated that a $10,000 security deposit for the mill lease[2] was converted by the agreement to an earnest money deposit on the purchase of the mill and the other properties. John Swanson, a business associate of Erickson, corroborated Erickson's story. He stated that he was present at the May 28 meeting. According to Swanson, an offer was made by Erickson and others for the purchase of the mill and other properties as well as discharge of the disputed $150,000 obligation on the note. Swanson said that the offer was accepted by William Franz, Frederic Franz and Paul Anderson, three business associates of Larsen on behalf of Larsen. Swanson also stated that the $10,000 security deposit on the mill lease was converted to a good faith deposit on the purchase agreement.

The district court granted the motion for summary judgment on the following grounds: 1) no oral agreement was reached on May 28, 1975, which discharged the $150,000 debt, and 2) even if an agreement was reached, it was executory in nature thus requiring the appellants to actually perform their obligations under the alleged agreement to satisfy the $150,000 debt.

We hold that summary judgment was improperly granted.

I.

In *Ozark Milling Co., Inc. v. Allied Mills, Inc.,* 480 F.2d 1014, 1015 (8th Cir. 1973) (per curiam), we said:

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of sum-

1. The defendants are Einar Erickson, Tony Sandler, Jack Willard, Newark Mining Corporation and Silver Industries, Inc. Erickson and Sandler reside in Nevada. Newark Mining Corporation and Silver Industries, Inc. are corporations incorporated under the laws of Nevada and have their principal place of business in Nevada. Defendant Willard resides in Arizona.

2. Erickson and others were operating the Ely Mill on May 28, 1975, under the terms of a mill lease agreement executed on March 15, 1975.

mary judgment where the record discloses that there exists no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. Summary judgment is an extreme remedy, one which is not to be entered unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances.

We have also said that summary judgment is "notoriously inappropriate" in cases which involve issues of intent or other subjective feelings. *Pfizer, Inc. v. International Rectifier Corp.,* 538 F.2d 180, 185 (8th Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977); *see also* 6 J. Moore, Federal Practice ¶ 56.17[41.–1] (2d ed. 1976).

### A.

■ The district court erred in granting summary judgment on the ground that no

3. Larsen was not present at the May 28 meeting. Thus there remains some question as to whether those who were present, *viz.* William Franz, Frederic Franz and Paul Anderson, had authority to bind Larsen to the alleged oral contract. The affidavits of the parties do not directly confront this issue, although Swanson stated in his affidavit that the offer of the Erickson group was accepted by Franz, Franz and Anderson on *behalf of Larsen.* Swanson did not state that they had the authority to do so. No counter affidavits were filed by the plaintiff disclaiming an agency relationship between himself and Franz, Franz and Anderson. The district court did not decide the issue. Nevertheless, counsel for Larsen asserted at oral argument that no such agency relationship existed. At this stage of the proceedings, it suffices to hold that plaintiff has not established with the requisite clarity his right to judgment as a matter of law on this basis. On remand, the plaintiff may, of course, pursue this issue by affidavit or by proof before the trier of fact should the case proceed to trial. If new affidavits establish conclusively that there was no agency relationship between Larsen and the Franzes and Anderson, or if adequate proof is adduced at a hearing to show this lack of agency or that no oral contract was agreed

oral contract was made at the May 28 meeting in Las Vegas. Erickson and Swanson filed sworn statements that 1) an oral contract involving the mill and the discharge of the $150,000 debt was consummated at the meeting, and 2) a $10,000 security deposit was converted to an earnest money deposit on the purchase of the mill. Although Larsen controverted these statements, the affidavits of Erickson and Swanson created a genuine issue of material fact in regard to the existence of the subsequent oral contract. Accordingly, summary judgment on this basis was inappropriate.[3]

### B.

■ We turn next to the issue of whether, under Minnesota law [4] an executory accord must be performed in order to satisfy the original obligation if the oral agreement did, indeed, exist. The district court held that an executory accord must be performed to satisfy the original obligation. We disagree.

to, the trial court need not reach the issue of executory accord.

4. We are *Erie*-bound to apply Minnesota law in construing the defense of executory accord. Under *Klaxon Co. v. Stentor Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), we apply the conflict of laws rules of the forum state which, in this case, is Minnesota. The executory accord issue relates to the validity and legal effect of the $150,000 promissory note and thus, under Minnesota law, is determined by the law of the place of that contract. *Larx Co. v. Nicol,* 224 Minn. 1, 28 N.W.2d 705, 710 (1946); *McCulloch v. Canadian Pac. Ry. Co.,* 53 F.Supp. 534, 540 (D.Minn.1943) (applying Minnesota conflicts law); *cf. Thomson-Houston Elec. Co. v. Palmer,* 52 Minn. 174, 53 N.W. 1137 (1893). Although signed in Nevada, the note at issue was delivered and was payable in Minnesota to the plaintiff who resides in Minnesota. Thus it was a Minnesota contract. *Id.* There is nothing in this record which shows that the parties explicitly or implicitly intended Nevada law to apply. *Compare Mueller v. Ober,* 172 Minn. 349, 215 N.W. 781, 782 (1927).

■ In *Don Kral Inc. v. Lindstrom,* 286 Minn. 37, 173 N.W.2d 921, 923 (1970), the Minnesota Supreme Court stated the applicable rule as follows:

> When the parties agree that the [subsequent] promise itself will constitute satisfaction of the prior debt, and the new agreement is based on sufficient consideration and is accepted in satisfaction, then it discharges the original claim and is a defense to an action based upon such claim.

*See also Burleson v. Langdon,* 174 Minn. 264, 219 N.W. 155, 157 (1928); *Thoele v. LaVallee Law Book Co.,* 155 Minn. 340, 193 N.W. 469, 470 (1923); *Ward v. Allen,* 138 Minn. 1, 163 N.W. 749, 751 (1917); *accord Trovatten v. Hanson,* 175 Minn. 357, 221 N.W. 238, 239 (1928). The touchstone is the intent of the parties. If the parties objectively intended the new promise to constitute full settlement of the original claim, the defense of accord and satisfaction is established under Minnesota law.

■ To be sure, the burden of establishing the accord and satisfaction is on the debtor, "* * * who must prove there was an express agreement that the [new promise] was taken absolutely as payment." *Don Kral Inc. v. Lindstrom, supra,* 173 N.W.2d at 924; *see also Thoele v. La Vallee Law Book Co., supra,* 193 N.W. at 470. And absent proof on the matter, a presumption exists that the parties contemplated performance of the accord as satisfaction. *Don Kral Inc. v. Lindstrom, supra,* 173 N.W.2d at 924. But this presumption is by no means conclusive, as the district court held. The debtor must be given the oppor-

tunity to prove, as a matter of fact, that the creditor accepted the new promise as satisfaction of the original claim. No such opportunity has been given to the Erickson group and thus summary judgment was improperly granted on this basis.[5]

## II.

The plaintiff argues that even if it is assumed that an oral agreement was reached at the May 28 meeting in Las Vegas, the oral agreement involved the sale of real property[6] and is thus unenforceable under the Minnesota statute of frauds, Minn.Stat.Ann. § 513.04. The plaintiff concludes that the oral agreement cannot satisfy the original obligation.

■ The record before us is simply inadequate to determine this issue as a matter of law. Drawing all inferences in favor of the defendants as we must, a serious question remains as to whether the $10,000 earnest money deposit constituted sufficient part performance to take this case out of the statute of frauds. It appears that the parties did not present this issue to the district court. Nor has this issue been fully briefed before this court. The doctrine of part performance is based on equitable considerations, *see Burke v. Fine,* 236 Minn. 52, 51 N.W.2d 818, 820 (1952); *Zunino v. Paramore,* 83 Nev. 506, 435 P.2d 196, 197 (Nev. 1967), which are undeveloped on this record. It would thus be inappropriate for this court to decide this question in the present posture of the case. On remand, the plaintiff may develop this issue by affidavit on motion for summary judgment or by proof at trial.[7]

---

**5.** On the basis of the record before us we cannot determine whether plaintiff's claim as it relates to Mr. Willard is barred by failure of consideration. We note however that Willard has raised a substantial question relating to the capacity in which he signed the $150,000 note. On remand, the district court shall permit Willard to introduce parole evidence respecting the capacity in which he signed the note. *See Weather-Rite, Inc. v. Southdale Pro-Bowl, Inc.,* 301 Minn. 346, 222 N.W.2d 789, 790–791 (1974).

**6.** The trial court should determine under the appropriate state law whether or not the oral

agreement involved real property. We note that the Ely Mill included structures with permanent foundations, sides and roofs.

**7.** The parties have assumed, with the exception of one unsupported statement in the defendants' reply brief, that Minnesota law controls the validity of the oral agreement. Under Minnesota conflicts law, the statute of frauds is considered a substantive rule of law. *Halloran v. Jacob Schmidt Brewing Co.,* 137 Minn. 141, 162 N.W. 1082, 1085 (1917). The applicable law is therefore the law which governs the oral agreement. The oral agreement in this case was made in Nevada and involved the Ely Mill

Reversed and remanded for further proceedings not inconsistent with the views expressed in this opinion.

which is situated in Nevada. On the limited record before us, we cannot discern whether the mill consists of personal or real property. The alleged agreement also involved other property, according to the affidavit of Mr. Erickson, but the record does not show whether this property is real or personal nor where the property is located. Thus it is impossible for this court to determine which law applies. On remand, the parties should develop the record in this respect and the trial court should determine whether Minnesota or Nevada law controls the determination of the validity of the oral agreement.