MARION P. THOMSON *vs.* GEORGE F. PENTECOST.
ARTHUR F. STONE *vs.* SAME.·

Franklin.    September 27, 1910. — October 19, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Evidence,* Opinion: experts, Materiality, Best and secondary·    *Deceit.*    *Damages,*
In tort.    *Practice, Civil,* New trial.

It is not to be presumed that the members of a jury are familiar with the value of
dairies as a matter of common knowledge, and in an action for deceit practical
farmers who have sufficient knowledge and experience may be allowed to give
their opinions as experts as to the value of a dairy leased to the plaintiff by the
defendant with false representations as to its value.                            .

In an action for damages alleged to have been caused by false and fraudulent
representations of the defendant as to the profits of a certain dairy, whereby
the plaintiff was induced to take a lease of the dairy from the defendant, the
man who managed the dairy for the defendant before the defendant leased it to
the plaintiff and who is a practical farmer with a knowledge of dairies and ex-
perience in conducting them, when called by the plaintiff as a witness, may be
allowed to give his opinion as an expert that no money could be made by run-
ning the farm as a dairy, this evidence being material to show the falsity of the
defendant's representations.

In an action for damages alleged to have been caused by false and fraudulent
representations of the defendant as to the profits from a certain dairy, whereby
the plaintiff was induced to take a lease of the dairy from the defendant, if the
man who managed the dairy for the defendant and had charge of keeping the
books there before the defendant leased the dairy to the plaintiff, when called
as a witness by the plaintiff, testifies that certain money paid to him by the de-
fendant when he ceased to run the farm did not represent profits from the dairy
but the increased amount and value of the live stock, this is not testimony as to
the contents of the books kept by the witness and cannot be excluded on that
ground.

One who has been induced to lease or purchase property by false and fraudulent
representations of the owner is not necessarily deprived of his remedy for
damages by the fact that the owner in making his representations referred to
his sources of information which the person deceived failed to consult, and
especially is such a failure to investigate no defense where an investigation was
prevented or discouraged by the requests and suggestions of the deceiving
owner of the property.

In an action for damages alleged to have been caused by false and fraudulent
representations of the defendant as to the profits of a certain dairy, whereby
the plaintiff was induced to take a lease of the dairy from the defendant, where
it appears that the defendant gave to the plaintiff a statement in writing as to
the profits of the dairy, the fact that in such statement the defendant used the
expression " I think " before giving the figures as to the net profits and called his

statement " an estimate," constitutes no defense, if on the evidence the jury are warranted in finding, and by their verdict find, that the defendant intended the plaintiff to understand and orally represented to him that the statement in writing contained actual facts taken from his books.

In an action for damages alleged to have been caused by false and fraudulent representations of the defendant as to the profits of a certain dairy, whereby the plaintiff was induced to take a lease from the defendant of his dairy farm and to purchase his milk route and live stock and other personal property, if the plaintiff proves his case as alleged, the measure of his damages is the difference between the value of what he received from the defendant and the value of what he would have received if the defendant's representations had been true, and he cannot recover a further sum for his losses in carrying on the business which he bought from the defendant.

In an action for damages alleged to have been caused by false and fraudulent representations of the defendant as to the profits from a certain dairy, whereby the plaintiff's sister was induced to take a lease of the defendant's dairy farm, and the plaintiff was induced to give up a profitable business in which he was engaged in order to become the manager of the dairy, if the plaintiff proves his case as alleged, the measure of his damages is the difference between the value of the new employment which he was induced to undertake and what that value would have been if the defendant's representations had been true, and he cannot recover a further sum for the time he lost by leaving his former employment and undertaking to run the dairy.

Where in an action for deceit the plaintiff has introduced evidence of facts which entitle him to recover, and the presiding judge submits the case to the jury with instructions which contain no error in regard to the defendant's liability but are erroneous in regard to the measure of damages, and the jury return a verdict for the plaintiff, in sustaining exceptions alleged by the defendant this court will restrict a new trial to the amount of the damages, the plaintiff being entitled to retain his verdict on the question of the defendant's liability.

TWO ACTIONS OF TORT for damages alleged to have been caused by false and fraudulent representations of the defendant, whereby the plaintiff Thomson was induced to purchase certain live stock from the defendant and with the plaintiff Stone to take a lease from the defendant of a dairy farm in Northfield, called the Maples Dairy, and the plaintiff Stone was induced to give up a profitable business in which he was engaged in order to become one of the lessees and to manage the dairy. Writs dated March 16, 1907.

In the Superior Court the cases were tried together before *King*, J.

The plaintiff Thomson testified that she had lived in North-field for thirteen or fourteen years ; that at some time in July or August, 1906, she had a talk with the defendant; that he said to her, " I hear you are interested in dairies and have

been looking at places in Bernardston "; that she told him she was interested, and the defendant asked why she didn't look at his; that she had never kept a dairy before this and did not know anything about keeping one; that later in consequence of the above conversation and in consequence of the defendant's son in law coming to see her, she went to see the defendant and asked him about his dairy; that he said his was as good a one as there was in the county, modern, up to date, with new machinery and good stock, and that he would like to talk with her about it; that she asked the defendant if he was making anything and he said he could not tell much about that; that he would have to consult the books; that she told him that she would have to have a statement as she was getting the place for her brother, the plaintiff Stone, who had a good position in Chelsea, and that she would have to have facts to put before him; that her brother would not want to leave that position unless he knew for a fact that this, the dairy, was as good as that; that she asked for a statement off the books to take to her brother of what the defendant had made and was making; that the defendant said he would get it from his manager, from his books, and send it to her; that he later sent her a letter and a statement; that after receiving these she took the statement to the defendant, showed it to him and asked if it was his statement of facts that she should take to her brother to show him what the dairy was doing, and that he said he took it off the books; that she said, " then it will warrant my going to Boston and presenting it to my brother," and he said, " Yes "; that he said it was the statement he took off the books of what the farm had done.

The letter and the statement referred to by the plaintiff Thomson and put in evidence as exhibits were as follows:

"The Maples, Northfield, Mass., Aug. 14, 06. Dear Miss Thompson: As promised I send you an estimate of the products and expenses of my dairy farm which I think is conservative. I think well managed the farm at present will net $2000.00 and carefully and systematically handled in 2 years time will add from $500. to $1000. to the amount as the natural fertilizers from the cow stables will so increase the productiveness of the land as to easily reach that figure.   Yours truly,

"Geo. F. Pentecost."

"Products — 11 Cows.

| | |
|---|---|
| 36500 qts. milk at 6 | $2190.00 |
| 50 hogs at $15.00 | 750.00 |
| 200 bushels of potatoes | 100.00 |
| 10 calves at $10.00 | 100.00 |
| Bull & Boar | 75.00 |
| | $3215.00 |

"Expenses :

| | | |
|---|---|---|
| Fertilizer | $200.00 | |
| Labor | 500.00 | |
| Feed | 250.00 | |
| Upkeep | 100.00 | 1050.00 |
| | Profit . . . . . . . . | $2165.00 |

" This is a very conservative estimate making no allowance for the heavy business in June, July, August and September during wh months we sell an average of 200 extra quarts at a profit of 2 c = $4.00 per day for 90 days = $360.00. In two years time we should sell enough hay to pay for the extra feed = $250.00, wh would add $500.00 to net profit = $2665.00."

The plaintiff Thomson went to see the plaintiff Stone and on October 9, 1906, the plaintiffs took a lease of the farm from the defendant for the period of one year, with the privilege of a further term of years, if mutually agreed upon, and purchased the live stock and other personal property at a figure arrived at by an appraisal, the appraisers being agreed upon by the parties, paying in all $2,725.50. The plaintiffs retained as manager one Beers, who had managed the place for the defendant, and also retained an Italian who had worked on the place. They continued to run the dairy for about three months; and then saw that they were losing money and began to sell off some of the stock. They ran the place in all about six months, when they gave up the lease.

The plaintiff Stone was the brother of the plaintiff Thomson and worked on the place. He testified that he gave up a position paying him $1,500 a year; that he relied on the statement printed above; that he made no money on the place, stayed there six months and was put to expense in securing

a new position; and that the defendant told him that he was making approximately $2,000 a year from the dairy.

Beers, the defendant's manager, testified that he first heard of the proposed sale in September, 1906; that the defendant said that the plaintiff Thomson was going to buy out the dairy at an appraisal of men and take a lease of it for one year, with the privilege of five years; that he, Beers, said, "I guess she won't take it for the other four"; that the defendant then said, "That is none of our business. If she wants to take it, let her have it"; that he, Beers, said, "If Miss Thomson knew as much about running the business as I did, she wouldn't have bought it"; and that then the defendant said, "Well, if they come to ask you anything about it, you are not obliged to tell them what you know."

Beers. also testified that he had charge of the books and that the dairy never made any money while the defendant had it; and that under the conditions existing, the lack of pasture and the fact that they could not raise enough stuff to feed out, the dairy was not worth the appraisal; that he told the defendant, before the plaintiff Thomson leased the dairy, that he could not make any money on the place; that the defendant showed him some figures before the plaintiff Thomson leased the dairy, representing a profit for the place per year, and that he told the defendant that he had not got the figures right and that he could not make $2,000 a year on the dairy.

The defendant contended that the letter and statement contained merely an estimate of what the dairy would do, not a statement of what it had done; and that he told the plaintiff Thomson that she could not make any profit on the farm the first year.

The plaintiff Thomson testified, in regard to what happened upon the occasion of a visit to the dairy made by her and her brother, the plaintiff Stone, shortly before they leased the dairy, as follows: "The next time I saw him [the defendant] was at his house adjoining the dairy in company with my brother. I think my brother did most of the conversing then. We started out together to go over the place and I remember when we got under the grape arbor, Mr. Pentecost said, 'I don't want my man, Beers, to know anything about this. You appear like city

people looking over my dairy.' Turning to my brother, ' You will be coming to look the place over.' "

The admissions of testimony by the judge to which the defendant excepted are described sufficiently in the opinion.

At the close of the evidence the defendant asked the judge for twelve rulings, of which the judge gave as instructions to the jury all but the four following:

" 5. If the defendant told the plaintiff the sources of his information concerning the matters as to which the misrepresentations are alleged to have been made, and gave her opportunity to investigate for herself, of which she did not avail, the plaintiff cannot recover."

" 9. That a false statement as to profits made by the seller to a purchaser is not actionable.

" 10. That upon all the evidence in this case the plaintiff cannot recover."

" 12. That the measure of damages if any there be in this case is the difference between the income which the defendant represented that the farm had produced and the income which the farm with careful and economical management could be made to produce."

The judge refused to make any of these rulings, and gave other instructions. The defendant excepted especially to that part of the charge relating to the measure of damages, which is described sufficiently in the opinion.

The jury returned a verdict for the plaintiff Thomson in the sum of $1,359.09 and a verdict for the plaintiff Stone in the sum of $268.77. The defendant alleged exceptions.

The cases were submitted on briefs.

*W. H. Brooks & W. Hamilton,* for the defendant.

*C. N. Stoddard & P. H. Ball,* for the plaintiffs.

SHELDON, J. At the trial of this case the defendant took many exceptions. We have considered only those which have been argued in his behalf, treating the others as waived.

We find no error in the admission of the testimony of Beers and Cushman as to the value of the defendant's dairy. They were practical farmers, and could be found to have sufficient knowledge and experience to give their opinions upon this question. *Gossler* v. *Eagle Sugar Refinery,* 103 Mass. 331.

*Hawks* v. *Charlemont*, 110 Mass. 110. It could not be presumed that the jury were familiar with the value of dairies, and the opinions of qualified witnesses were competent. *Miller* v. *Smith*, 112 Mass. 470, 476. *Ross* v. *Schrieves*, 199 Mass. 401, 402. The testimony of Beers that no money could be made by running it as a dairy was competent for the same reasons, and was material because it tended to show the falsity of one of the defendant's representations. The further testimony of Beers that the money paid him by the defendant when he ceased to run the farm was not profits, but represented the increased amount and value of the stock, was not testimony to the contents of the books kept by the witness, and could not have been excluded upon that ground.

It could not have been ruled that the plaintiffs' failure to investigate the truth of the defendant's statements, by questioning Beers and examining the books kept by him, was necessarily fatal to their recovery ; and the defendant's fifth request was rightly refused. It would have excluded from the consideration of the jury the testimony that the defendant requested the plaintiffs not to let Beers know of their intended purchase and that he suggested to Beers not to tell them what he knew about the dairy. Even apart from this consideration, the fifth request ought not to have been given without qualification. This was decided in *Whiting* v. *Price*, 172 Mass. 240, in which it was held that whether a purchaser is justified in relying upon representations made to him by a seller may be a question for the jury, although the seller referred to the sources of his information and even advised the purchaser to consult these. The rule was stated to substantially the same effect by the present Chief Justice in *Holst* v. *Stewart*, 161 Mass. 516, 522, quoted and followed in *Brady* v. *Finn*, 162 Mass. 260, 266. And see to the same effect *Nowlan* v. *Cain*, 3 Allen, 261; *Savage* v. *Stevens*, 126 Mass. 207; *Lee* v. *Tarplin*, 183 Mass. 52, 57; *Adams* v. *Collins*, 196 Mass. 422, 428; *Long* v. *Athol*, 196 Mass. 497, 504, 505; *Rollins* v. *Quimby*, 200 Mass. 162, 163; *Smith* v. *Werkheiser*, 152 Mich. 177; *Linington* v. *Strong*, 107 Ill. 295, 302; *Handy* v. *Waldron*, 19 R. I. 618.

We find nothing in the decision or in the reasoning of the court in *Mabardy* v. *McHugh*, 202 Mass. 148, to sustain the

defendant's contention.  The judge fairly submitted this issue to the jury, telling them that the plaintiffs were bound to be reasonably diligent in looking out for themselves and could not recover if they had failed of this duty.  The instructions were correct and sufficiently full.

The defendant has argued that the instructions given to the jury as to the defendant's liability were misleading.  We do not so consider.  The fact that in the written paper which he gave to the plaintiffs he called what he said an " estimate " and used the words " I think," could not avail him, if the jury found, as upon the rulings made their verdict shows that they did find, that he intended the plaintiffs to understand and orally represented to them that these were statements of actual facts taken from his books.  *Way* v. *Ryther*, 165 Mass. 226.  The attention of the jury was carefully and particularly called to this question, and it now must be regarded as settled by their verdict.

The damages to which the plaintiffs were severally entitled were to be measured by the difference between the actual value of what they severally received and what that value would have been if the defendant's representations had been true.  *Whiting* v. *Price*, 172 Mass. 240.  Under the written executory agreement between the parties, the plaintiffs together were to have taken a lease of the defendant's dairy farm and to have purchased his milk route and live stock and other personal property. But finally the plaintiff Thomson took and paid for the lease and the property bargained for, and Stone left his former employment and undertook to run the farm and the business thereof for the other plaintiff, each acting upon and being induced by the defendant's false representations.  It follows that the damages to be recovered by Stone were the difference between the actual value of this new employment which he undertook and what that value would have been if the defendant's representations had been true.  But the judge left it open to the jury to give to the plaintiff Thomson a further sum for her losses in carrying on the business which she had bought of the defendant, and to the plaintiff Stone a further sum for the time which he lost by leaving his former employment and undertaking to run the dairy.  This was giving to them more damages than upon their declarations they were entitled to receive.  They were

content, if the defendant's representations were true, to run the risk of undertaking this business and abandoning their former occupations and employments. They are indemnified if these representations are made good. *Globe Refining Co.* v. *Landa Cotton Oil Co.* 190 U. S. 540, 546.

Nor was this error corrected by what the judge, after recalling the jury, said to them "substantially in the place" of what he had said before on the subject of damages. It was still left open for the jury to give to each plaintiff a larger amount of damages than ought to have been charged against the defendant. Whether this actually was done we have of course no means of knowing. But it should be added that as the judge told the jury that the plaintiff Stone had bought nothing from the defendant and was not to be given anything for the difference in the value of the property which was the measure of Mrs. Thomson's damages, it cannot be said that each plaintiff separately was allowed to recover the whole amount of the defendant's liability, and the defendant's complaint as to this point is without foundation.

The right of each plaintiff to a verdict is settled, and ought not to be reopened. But as to the amount of damages in each case, the defendant's exceptions must be sustained and a new trial must be had upon that question only. *Stynes* v. *Boston Elevated Railroad*, 206 Mass. 75, 78. *Montgomery Door & Sash Co.* v. *Atlantic Lumber Co.* 206 Mass. 144, 147.

*So ordered.*