## MAURICE SHEFFER vs. MORRIS RUDNICK.

Suffolk.    May 20, 1935. — June 24, 1935.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Deceit.   Agency,* Knowledge of agent.

Where a straw holding title to a parcel of real estate gave the owner a mortgage for $45,000 which the owner assigned to a savings bank as collateral security for a loan of $30,000, a representation made by the owner to a prospective purchaser of the property, to the effect that the bank had lent $45,000 upon an original mortgage taken by it directly from the owner, could properly be found to be a misrepresentation of a material fact, and was actionable if the prospective purchaser rightly relied on it as a material inducement to making the purchase.

The evidence warranted findings that a purchaser of real estate relied in making the purchase upon a false representation by the seller as to the nature of a mortgage upon the property, and that the purchaser exercised reasonable care in so relying without examining records which might have revealed the falsity.

A misrepresentation which is a material inducement to another to enter into a transaction need not be the sole or predominating inducement in order to be the basis of an action for deceit.

In the circumstances, it could not rightly have been ruled as matter of law that a purchaser of real estate had, through his attorney, knowledge from the records at the registry of deeds sufficient to reveal to him that a representation made by the seller as to the nature of a mortgage on the property was false.

TORT.    Writ dated August 29, 1928.

The action was tried in the Superior Court before *O'Connell,* J.    Material evidence is stated in the opinion.    Subject to leave reserved, a verdict for the plaintiff in the sum of $3,000 was recorded.    Thereafter the judge ordered entered a verdict for the defendant.    The plaintiff alleged an exception.

*E. Greenhood,* for the plaintiff.

*E. Kurland,* for the defendant.

PIERCE, J.    This is an action of tort for alleged deceit in the sale of real estate.    No question of pleading is raised. The record contains substantially all the evidence in the

case. At the close of the evidence the defendant made a written motion for a directed verdict which the judge then refused to allow, stating that, in the event of a verdict being returned for the plaintiff, he would reserve leave to enter a verdict for the defendant on the defendant's motion. The case was submitted to the jury with instructions to which no exception was taken, and the jury returned a verdict for the plaintiff in the sum of $3,000. Thereupon and before the recording of the verdict, the judge, with the assent of the jury, reserved leave to enter a verdict for the defendant, if upon the exceptions taken or the question of law reserved the judge decided that a verdict for the defendant should be entered. The defendant filed a motion for a new trial which was later denied, but, on May 4, 1934, under said reservation of leave, the judge entered a verdict for the defendant, to which entry the plaintiff duly excepted. The case, therefore, is to be considered on the reported evidence most favorable to the plaintiff's contentions.

The evidence thus considered warranted a finding by the jury of the following facts: On April 10, 1925, the defendant was the real (though not the record) owner of a parcel of registered land which stood in the name of his son-in-law, Edward Ansin. On that date the defendant received from said Ansin a registered first mortgage, in statutory form, on the property for $45,000 purporting to mature in three years. On the same date (August 10, 1925?) the defendant made a registered assignment of said mortgage and the note secured thereby to Hingham Savings Bank. This assignment is absolute in form and contains no recital of the amount of the consideration for the transfer. Early in November, 1925, the plaintiff, as a prospective purchaser, saw and talked with a broker, with whom the property had been listed, and the broker informed him that the price was $60,000 and that there was a mortgage of $45,000 on it, but that he did not know who the mortgagee was. Subsequently, on November 17, 1925, in the course of an interview the plaintiff inquired of the defendant as to "who held the first mortgage on that property" and the defendant answered "The Hingham Savings Bank." The defendant

then said he wanted $60,000 for the property, but the plaintiff offered him $55,000, all cash above the mortgage. The defendant, as soon as he heard the offer, told the plaintiff that he "had an awful nerve to offer him $55,000 when the Hingham Savings Bank saw fit to loan $45,000 on the property," and that, knowing how strict savings banks are in their investments, he (the defendant) could not see why the plaintiff "made him the low offer of $55,000." The plaintiff believed the statement of the defendant that the Hingham Savings Bank held the first mortgage of $45,000 on the property, and raised his offer for the property to $57,000. The plaintiff and defendant, on the insistence of the plaintiff, then went to the plaintiff's lawyer, where the defendant said in answer to the lawyer's questions "that the property was mortgaged for $45,000, that the mortgage was held by the Hingham Savings Bank and had about two and one half years yet to run." The defendant then for the first time disclosed that he held the property in his son-in-law's name and suggested that the agreement of sale be made in Ansin's name. On the same day a written sale agreement was executed by the parties and the plaintiff paid the defendant a $1,000 deposit and later, on December 24, 1925, on delivery of the deed, paid the balance of $11,000, all in reliance on said representations. The fact was not disputed that at the time the assignment was originally made to the savings bank and throughout the premises said savings bank held the assignment only as collateral for a loan by said bank to the defendant on his collateral note for $30,000. The defendant never informed the plaintiff, and until six months after the passing of the papers the plaintiff never learned, that the bank was not the absolute owner of the mortgage nor that it held it only as collateral for a loan to the defendant of $30,000. On the day of the passing of the papers, on December 24, 1925, at the office of the plaintiff's attorney, the defendant's attorney gave to the plaintiff's attorney a deed of the property and received $11,000 which the defendant's attorney agreed not to turn over to the defendant until the plaintiff's attorney had an opportunity to go to Dedham to check up the title

to the moment and record the deed. In this connection, it appears in the cross-examination of the plaintiff that the plaintiff had employed the attorney who drafted the agreement to examine the title and that he understood the attorney did so; that the plaintiff told the attorney that the defendant had said the mortgage was given originally to the bank; that he knew the mortgage on this property was properly recorded; that "until he found out six months later on getting an interest notice from a private party" he had thought the mortgage was a "straight mortgage" to the bank; and that before he received the said notice he had no idea the mortgage had been assigned to the bank.

On said cross-examination the plaintiff testified that he was thirty-five years of age, a dentist by profession, though his grandfather had been a real estate broker for thirty years. The extent of his (the plaintiff's) real estate experience was in the purchase of three other properties all of which were subject to savings bank mortgages. The matter of the mortgage was important to him and he would not have bought the property if he had known that the mortgage was originally made to a private party. He did not seek information from the bank "concerning the mortgage" because he believed the defendant. His attorney was employed "only to examine the title." Prior to the purchase he had seen the property, "had discussed it with his uncle and another and had formed the idea that it was worth about $60,000." The plaintiff's attorney, on cross-examination, testified that he had sent his partner to examine the record, "the certificate of title," but that the only information he got from him "was that there was a $45,000 mortgage of record held by the bank." A memorandum was introduced and shown the witness which indicated that the partner had made a note of the assignment of the mortgage to the bank, but it did not show that the mortgage was taken as collateral security for that amount. The plaintiff's attorney in this connection testified that his partner did not bring back his report until after the consummation of the sale agreement; that he did not remember

the plaintiff emphasizing that this was "a straight savings bank mortgage," but before the deal was completed he wanted to know that he was getting a savings bank mortgage; and that there was nothing in the records or in the assignment which would disclose to him that the assignment was only by way of collateral, much less the amount of the consideration.

Real estate experts called by the plaintiff testified, among other things, that if the defendant's representations had been true the fair market value of the property would have been $57,000, but with a mortgage running to a private individual and an assignment of such mortgage to a savings bank as collateral, the value of the property was $48,000; that the way in which property is financed is very important to a buyer, and the fact that there was a savings bank mortgage on the property would add $9,000 to its market value and that the value would not be so enhanced if the bank took the mortgage as collateral for a loan.

On all the evidence, the facts and the inferences of fact which the jury could properly find, it is plain they could find that the defendant knew that the savings bank did not hold the $45,000 mortgage as an original loan and that it did hold that mortgage as collateral security for a loan of $30,000. The statement that the $45,000 mortgage was held by the Hingham Savings Bank, taken in conjunction with the defendant's statement that the property was worth more than the amount of the plaintiff's original offer of $55,000 because of the investment by a savings bank in a $45,000 mortgage on the property, imported "not merely that the legal mortgage title was in the bank, but also that the bank held that title as an original mortgagee to secure a loan that it had made on the faith of its appraisement of the value of the property as a safe investment for savings bank funds." *Greene* v. *Adomaitis,* 259 Mass. 605, 607. Such representation was nonactionable as to value, but was an actionable representation as to a specific fact — the price third persons were willing to pay for the property. *Belcher* v. *Costello,* 122 Mass. 189, 190.

*Weeks* v. *Currier*, 172 Mass. 53, 54, 55. *Adams* v. *Collins*, 196 Mass. 422, 427. *McKinley* v. *Warren*, 218 Mass. 310, 313.

It cannot be said as matter of law that the representations were not material; but whether they were or were not material was at least a question of fact for the jury. *Fottler* v. *Moseley*, 179 Mass. 295, 298. It is obvious the representations could have been found by the jury to have been understood by the plaintiff in the sense that the bank had itself loaned $45,000 upon an original mortgage taken by it directly from the owner of the property, and that the loan did not exceed sixty per cent of the value of the estate mortgaged. It is plain that if the natural tendency of the representation is such as to induce reliance, and the testimony of the representee is that he did so rely, the jury may be allowed to find such reliance. *Nash* v. *Minnesota Title Ins. & Trust Co.* 159 Mass. 437, 443. *Mignault* v. *Goldman*, 234 Mass. 205, 208. *Duncan* v. *Doyle*, 243 Mass. 177, 180. In the case at bar both of these propositions are applicable. The plaintiff did not as matter of law rely on the representations because he was experienced in real estate dealings, and because he formed an opinion of the value of the property based upon his own investigation. In this connection it is to be noted that a misrepresentation to be actionable does not have to be the sole or predominating inducement to the transaction. *Matthews* v. *Bliss*, 22 Pick. 48, 53. *Safford* v. *Grout*, 120 Mass. 20, 25. *Duncan* v. *Doyle*, 243 Mass. 177, 180. The fact that the plaintiff may have had some experience in real estate dealings is only one element to be considered by the jury in determining whether he did in fact rely on the representations. *Rollins* v. *Quimby*, 206 Mass. 391, 394. *Anastas* v. *Koliopoulos*, 222 Mass. 267, 269. *Picard* v. *Allan*, 285 Mass. 15, 18.

The question whether the plaintiff exercised reasonable care in relying upon the representations is ordinarily one of fact. Commonly it has been held that the plaintiff is not barred from recovery in deceit, as matter of law, by his failure to examine records which may have revealed the

falsity of representations made, and that failure to do so raises a question of fact for the jury. *David* v. *Park*, 103 Mass. 501, 503. *Rollins* v. *Quimby*, 200 Mass. 162, 164. *Lynch* v. *Palmer*, 237 Mass. 150, 152. *Brockton Olympia Realty Co.* v. *Lee*, 266 Mass. 550, 557. *Charbonneau* v. *Rokicki*, 278 Mass. 524, 526, 527. *Tatton* v. *Wade*, 18 C. B. 371, 388. Whether the plaintiff should have made further examination of the records was properly for the jury. *Whiting* v. *Price*, 172 Mass. 240, 241. *Thomson* v. *Pentecost*, 206 Mass. 505, 511. One of the defendant's chief contentions is that the partner of the plaintiff's attorney had examined the records and had discovered that the Hingham Savings Bank held the mortgage by way of assignment, although the nature of the transaction in which the assignment was taken was not disclosed nor was the amount of the consideration. The defendant argues that the plaintiff by his testimony based his right to damages on his contention that he was misled into believing that the savings bank held the mortgage as original mortgagee, and further argues that he could not have relied on such misrepresentation because he had knowledge through his agent that the bank held by way of assignment, citing *Baker* v. *James*, 280 Mass. 43, *Ratshesky* v. *Piscopo*, 239 Mass. 180, 186, and *Putnam* v. *Handy*, 247 Mass. 406, 409; but the jury could have found that the plaintiff's attorney believed that the plaintiff would be satisfied if he obtained a mortgage held by a savings bank by way of assignment. In the circumstances here disclosed the jury properly could have found that the plaintiff had no knowledge of the assignment until after the passing of the papers and the recording of the deed. More particularly they could have found that the partner of the plaintiff's attorney told him (the attorney) that there was a $45,000 mortgage of record held by the bank, and that the attorney had no reason to know that the fact was different. In any view of the evidence it is plain that a question of fact was presented and it could not have been ruled rightly that the attorney, as agent, had information which, had it been disclosed to the plaintiff, would have shown him that he was deceived by

the misrepresentations of the defendant. *Lee* v. *Tarplin*, 183 Mass. 52, 56. *Arnold* v. *Teel*, 182 Mass. 1, 4.

The rule of damages applicable in actions for deceit is that recovery will be allowed of the difference between the money value of the property as represented and its actual value. *Thomson* v. *Pentecost*, 206 Mass. 505, 512. *Vouros* v. *Pierce*, 226 Mass. 175, 178. *Leader* v. *Kolligan*, 262 Mass. 63, 65. The value of property as represented and its actual value are questions of fact and a proper matter for expert opinion. *Thomson* v. *Pentecost*, 206 Mass. 505, 510. The testimony of the experts above referred to warranted a finding that the plaintiff paid a sum of money in excess of the fair value of the property, induced to do so by the intentional misrepresentations of the defendant to that end.

Concededly the jury were properly instructed upon every issue, one of which was the question of damage. It is manifest, as the plaintiff contends, "that there was sufficient evidence to warrant the jury in finding every essential element of an actionable misrepresentation, one materially inducing the purchase, one rightly relied on, and one occasioning actual, legally recognizable damage." The case was submitted rightly to the jury, the plaintiff's exceptions are sustained and judgment is to be entered on the verdict for the plaintiff.

*So ordered.*