ELIE FORMAN *vs.* MAURICE J. HAMILBURG.

SAME *vs.* JENNIE M. HAMILBURG.

Suffolk.    January 4, 5, 1938. — March 30, 1938.

Present: RUGG, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Deceit.    Waiver.    Evidence,* Of value; Opinion: expert.

The lessee of a garage could maintain an action of deceit against the lessor for knowingly making false representations as to its then capacity, volume of business, and profits, relied upon by the lessee to his damage.

That the volume of business of a garage immediately after the making of a lease was materially less than the lessor had represented it to be was evidence that the representation was false.

Proof of the falsity of a lessor's representations to a prospective lessee as to the capacity of his garage, the volume of its business and its profits warranted an inference that the lessor knew the representations to be false and intended the lessee to rely on them.

Whether an intending lessee of a garage, upon the owner's refusing him an interior inspection, relied upon his own estimate of its capacity from a casual outside inspection, or relied upon the statements of the owner, was a question of fact for the jury at the trial of an action for deceit practised by the owner in obtaining the lease to the plaintiff.

A lessee's right of action for deceit by his lessor in the negotiation for the lease was not waived by continued occupation of the premises and payment of rent after discovery of the fraud.

In an action by a lessee of a garage for false representations by the lessor as to its capacity, volume of business and profits, expert testimony as to its fair rental value on the basis of the volume of business actually done by the plaintiff was admissible.

TWO ACTIONS OF TORT.    Writs in the Superior Court dated September 11, 1933.

A verdict was ordered for the defendant in each case by *M. Morton,* J.    The plaintiff alleged exceptions.

*D. C. Sachs*, for the plaintiff.

*F. L. Kozol*, for the defendants.

DOLAN, J. These are two actions of tort for deceit, to recover damages for alleged fraud and misrepresentations in connection with the leasing of a garage. They were tried together to a jury, and, at the close of the plaintiff's case, the judge directed a verdict for the defendant in each case. The cases come before us on the plaintiff's consolidated bill of exceptions to the exclusion of certain evidence and to the allowance of the defendants' motions for directed verdicts. It is agreed that the title to the premises involved was in the name of the defendant Jennie M. Hamilburg and that her husband, the defendant Maurice J. Hamilburg, hereinafter called the defendant, had full authority to act for his wife in connection with the lease and the negotiations leading up to its execution.

There was evidence that in the fall of 1932 the plaintiff, who had been in the garage business for twelve years, was "looking around for a garage location." He was introduced to the defendant in October, 1932, through a broker, who died prior to the trial. The parties had not met before and the plaintiff knew nothing of the garage known as "Hamilburg's Garage," which was located on West Newton Street, in Boston. The plaintiff and the defendant had several conferences with relation to leasing the garage during October and the early part of November, 1932. During the negotiations the defendant told the plaintiff that the garage held three hundred "cars"; that he (the defendant) had one hundred twenty-five customers who were paying $10, $12, and $15 a month; that he had twenty-five "dead storage" customers who were paying $4 and $5 a month; and that he was taking in $125 a week from transient business, due to the Mechanics Building "bouts," and was making $10,000 a year. The plaintiff asked permission to see the garage but the defendant refused, saying that "if they did not come to terms it will damage him because the help will start to steal." The plaintiff did visit the location and "size[d] up the garage from outside."

On November 19, 1932, the defendant Jennie M. Hamil-

burg and the plaintiff executed an indenture of lease of the premises for a period of two and one half years beginning December 1, 1932, at a rental of $7,000 a year, payable $583.33 on the fifteenth day of each month. The plaintiff deposited with the defendant lessor $2,500 to secure the performance of his obligations under the lease at the time of the execution of the lease.

The plaintiff took possession of the garage on December 1, 1932, and discovered that the garage could not accommodate more than one hundred fifty automobiles. There were seventy or eighty-five "live storage" customers paying $8, $10 and $5 a month. Those paying $5 a month were "day storage" patrons. After the plaintiff entered into possession of the garage the receipts from transient business amounted to $25 to $30 a week. There was evidence that many of the names listed in the defendant's books of accounts represented automobiles which had been abandoned and on which no rental had ever been paid. The plaintiff spoke to the defendant about the situation but paid the rent for December, 1932, and for January, February and March, 1933. He paid $350 on account of the rent for the month of April, 1933. Following this he had some conversation with the defendant lessor who then brought an action of summary process against him. Judgment for possession was entered therein by agreement on June 15, 1933, and the plaintiff vacated the premises that day. The plaintiff testified that he relied on the statements made to him by the defendant, that he had no means of ascertaining the number of customers or how much they paid except through the defendant. The jury could have found that the plaintiff ran the business at a loss.

The representations testified to by the plaintiff as having been made by the defendant were of existing material facts. *Hedden* v. *Griffin*, 136 Mass. 229. *Dawe* v. *Morris*, 149 Mass. 188, 191. In *Powers* v. *Rittenberg*, 270 Mass. 221, 223, 224, it was expressly held that representations as to the capacity of a garage, the number of automobiles in storage, the rents and the gross income and the profits could be found to have been material inducements to a lease of the

garage.  See also *Boles* v. *Merrill*, 173 Mass. 491; *Lee* v.
*Tarplin*, 183 Mass. 52, 57; *Thomson* v. *Pentecost*, 210
Mass. 223; *Vouros* v. *Pierce*, 226 Mass. 175; *Rudnick* v.
*Rudnick*, 281 Mass. 205.  The plaintiff is not precluded
from recovery even if he relied upon the representations
of the defendant and did not investigate carefully before
executing the lease.  Whether he did rely on the defendant's
representations or on the casual investigation he made from
the outside of the garage was for the jury.  See *Noyes* v.
*Meharry*, 213 Mass. 598, 600; *Anastas* v. *Koliopoulos*, 222
Mass. 267, 269; *Mignault* v. *Goldman*, 234 Mass. 205, 209;
*Wiley* v. *Simons*, 259 Mass. 159, 161; *Picard* v. *Allan*, 285
Mass. 15, 17.  This has been held even where the seller
referred to the sources of his information and advised the
purchaser to consult them.  See *Thomson* v. *Pentecost*, 206
Mass. 505, 511, and cases cited.  The testimony of the
plaintiff as to the volume of business done by him was
sufficient to warrant an inference by the jury that the busi-
ness done by the defendant in the conduct of the garage
was not of the volume he represented it to be.  This evidence
presented a question for the jury.  "In the usual course of
events it is not to be expected that an established business
. . . will at once seriously diminish without some good
cause."  *Commonwealth* v. *Clancy*, 187 Mass. 191, 194, 195.
If the jury found that the representations were false, they
could also have found that the defendant knew of their
falsity and intended the plaintiff to rely on them.  *Wiley*
v. *Simons*, 259 Mass. 159, 161.

The defendants contend that the plaintiff is precluded
from recovery in any event because " he knew the capacity
to be 150 cars before he signed the lease," and because "he
found out the statements which he claims Hamilburg made
were untrue in three days" after he signed the lease on
November 19, 1932, and because he remained in possession
for some months after he discovered the true facts and
until he was forced out by the judgment in summary
process.  The record does not sustain the statement of
the defendants that the plaintiff knew the capacity of the
garage to be for only one hundred fifty "cars" before he

signed the lease. His testimony on cross-examination was that he estimated the capacity of the garage to be for one hundred fifty "cars" and that he discovered the garage did not have a capacity of three hundred "cars" after the signing of the lease. His discovery of the fact that the capacity was as low as one hundred fifty "cars" could have been found by the jury to have been delayed until after he took possession. An examination of the record discloses that, in testifying that he discovered the "statements" of the defendant were untrue about three days after signing the lease, by "statements" the plaintiff referred only to the representations of the defendant as to capacity, because, after that testimony was given in cross-examination, he testified in redirect examination that it was after he took possession of the garage that he discovered how many tenants there were, "not before"; that it was then that he discovered what the tenants were paying, and that he "found out anything about the transient business."

Upon discovery of the fraud the plaintiff could have repudiated the contract or could affirm it and bring an action for damages. *Whiting* v. *Price*, 172 Mass. 240, 243. *McKinley* v. *Warren*, 218 Mass. 310, 313. *McNulty* v. *Whitney*, 273 Mass. 494, 500. Even if by remaining in possession of the premises for several months after learning of the fraud he lost the right to rescind, the loss of that right does not affect his right to recover damages caused by the false representations. *Andrews* v. *Jackson*, 168 Mass. 266, 269. *McKinley* v. *Warren*, 218 Mass. 310, 313. *Doujotos* v. *Leventhal*, 271 Mass. 280, 283. *McNulty* v. *Whitney*, 273 Mass. 494, 500. *Labagnara* v. *Kane Furniture Co.* 289 Mass. 52, 55. Williston, Contracts (Rev. Ed.) § 1524. Moreover, waiver is the intentional relinquishment of a known right and the question ordinarily is one of fact and not one of law. *McGrath* v. *Quinn*, 218 Mass. 27, 29. *Doujotos* v. *Leventhal*, 271 Mass. 280, 283. The statement in the case last cited, concerning the effect of an election to perform a contract, wholly executory, when the fraud was discovered, has no application in the present case where the jury could have found that the entire fraud

was not known to the plaintiff until after he had entered upon performance.

The question put by the plaintiff at the trial to a witness who had been qualified as an expert, as to the fair rental of the garage based on the volume of business done by the plaintiff, was excluded subject to the plaintiff's exception. An offer of proof was made by the plaintiff that the witness would testify that, based on the volume of business done by the plaintiff, its rental value would be $250 a month or $3,000 a year. The same witness was allowed to testify that the fair rental value, had the representations of the defendant been true, would have been materially higher than the rental fixed by the lease. The measure of damages in an action for deceit, apart from interest, is "the difference in actual value between that which the plaintiff in fact got and that which he would have got if the representation had been true." *Piper* v. *Childs*, 290 Mass. 560, 562, and cases cited. See also *Stiles* v. *White*, 11 Met. 356, 358; *McKinley* v. *Warren*, 218 Mass. 310, 314. "The value of property as represented and its actual value are questions of fact and a proper matter for expert opinion." *Sheffer* v. *Rudnick*, 291 Mass. 205, 212. It follows that the evidence offered by the plaintiff tending to establish the rental value of the premises in the light of the actual capacity of the garage and the volume of business done by the plaintiff was improperly excluded.

On the plaintiff's evidence, including that as to resulting damage which was improperly excluded, the jury could find that the representations made by the defendant were of material existing facts; that they were false and that the defendant knew them to be false; that they were made with intent that they should be relied on by the plaintiff and to induce him to act upon them; that he did rely and act upon them; and that damage directly resulted therefrom. "There was evidence of all the essential elements of deceit." *Piper* v. *Childs*, 290 Mass. 560, 562. The action of the judge in directing verdicts for the defendants was error, and the entry in each case will be

*Exceptions sustained.*