MARTHA R. EURICH AND ANOTHER v. EMELIE T.
BARTLETT AND ANOTHER.[1]

January 6, 1922.

No. 22,453.

**Rescission of contract for fraud—findings sustained.**

1. In an action to rescind a contract for fraud, it is *held*, that the evidence justified the findings of the trial court to the effect that defendants made no fraudulent representations, concealed no material facts, and that, in entering into the contract, plaintiffs relied upon an independent inquiry into the subject matter of the transaction, conducted through an attorney employed for the purpose.

**New trial denied.**

2. The record presents no error for which a new trial may be granted.

Action in the district court for Hennepin county to rescind a contract and to recover $4,500. The case was tried before Bardwell, J., who made findings and dismissed the complaint. From an order denying their motion for amended findings and conclusions or for a new trial, plaintiffs appealed. Affirmed.

*Dille, Hoke, Krause & Faegre*, for appellants.

*Allen & Fletcher*, for respondents.

BROWN, C. J.

Action to rescind a contract for fraud and to recover what plaintiffs parted with in the transaction, in which defendants had judgment and plaintiffs appealed from an order denying their motion for a new trial.

It appears that plaintiffs, husband and wife, were the owners of a residence property in the city of Minneapolis which they desired to dispose of by sale or exchange. It was encumbered by a mortgage in the sum of $4,500, leaving an equity therein of the value, as found by the trial court, of $2,500. They listed the property for sale with

[1]Reported in 186 N. W. 138.

a local agent, who on or about October 1, 1917, called their attention to the fact that defendant Merrill Bartlett was the owner of a block of stock in the photoplating company, a corporation engaged in the development of a secret process for transferring photographic and other impressions to metal surfaces, producing attractive advertising specialties, which he had offered for sale or exchange for real property. Plaintiffs became interested, and, after a somewhat extensive inquiry and investigation into the affairs of the corporation and its future prospects, entered into an exchange agreement by which they deeded the dwelling property to defendant Emilie T. Bartlett, wife of her codefendant, Merrill Bartlett, in consideration of which Bartlett transferred to plaintiffs 45 shares of the preferred and 22 shares of the common stock of the corporation; for the purposes of the exchange the stock was taken at $4,500, and plaintiff's equity in the property at the same amount. The transaction was completed on November 27, 1917. The corporation, on May 21, 1918, went into voluntary liquidation and a receiver was appointed to wind up its affairs. Plaintiff William Eurich attended the meeting of the stockholders at the time the insolvency proceedings were decided upon. At the conclusion of those proceedings a new corporation was formed to continue the business of the old.

Thereafter in August, 1918, plaintiffs brought this action to rescind the contract, charging in the complaint that it was induced and brought about by misrepresentation and acts of fraudulent concealment of material facts. Defendants by answer put in issue all allegations of the complaint as to misrepresentation and fraudulent concealment, and in addition thereto affirmatively alleged that in entering into the contract plaintiffs acted, not on any representations made by defendants, but on information acquired by them through an independent investigation into the affairs of the corporation and the value of its stock. The allegations of new matter in the answer were put in issue by the reply. The trial was before the court without a jury, at the conclusion of which the court found as facts that no false or fraudulent representations were made by defendants to induce the contract, that there was no fraudulent concealment of any material fact, and finally that, in entering into the

transaction, plaintiffs relied solely upon facts made known to them by their own independent investigation, conducted through a representative employed by them for the purpose. As conclusions of law, judgment was ordered that plaintiffs take nothing by the action. There was a motion for amended findings or a new trial which was in all things denied.

The assignments of error in support of the appeal present the questions: (1) Whether the findings of the trial court are clearly against the evidence, within the guiding rule in such cases; and (2) whether there was error in the admission or exclusion of evidence. We answer both questions in the negative.

It appears that the corporation was organized and created under the laws of South Dakota, but had its business establishment and headquarters in Minneapolis, this state. Its sole business was the manufacture and sale of advertising novelties and specialties. The business had been under way at the time of this transaction about a year, and was then and for some time previously had been operating at a loss. Some wartime contracts taken on by the company in 1917 constituted the principal cause of that situation. The company was unable to meet its expenses from the business transacted, and a short time prior to the date of this controversy had been compelled to borrow $30,000 to pay current bills, at the same time through some of its stockholders securing credit at one of the local banks in the sum of $20,000, in addition to the amount so borrowed. In short, the company was dragging and losing ground; no dividends had been paid on outstanding stock. In that situation a manager was employed to take charge of the business with a view of putting the company on a sound basis; the person so employed was an expert in that line and upon his employment set about the work assigned him. All parties concerned, including defendant Merrill B. Bartlett, who was an officer and stockholder, and a number of other stockholders, who were men of standing in the financial and commercial circles of Minneapolis, believed the prospects of the company very promising for the future, and through their influence the loan and bank credit was secured. The efforts of the manager

were not, however, successful and the company went into voluntary liquidation as heretofore stated.

When the subject of the exchange of the dwelling for the stock was brought to their attention, plaintiffs immediately employed an attorney to make an investigation into the affairs of the company, its property, effects and prospects of future development and success, and the transaction was not closed until after a full and extended inquiry had been by him made in that direction. The person so engaged was not only an attorney of standing and ability, but at the same time a capable business man, with considerable experience in the line of the particular investigation; he had often had occasion to investigate the affairs of corporations with the view of determining the value of their stock and their business standing and the advisability of investments therein. He went about his work intelligently and in good faith, and at the conclusion thereof advised plaintiffs that the stock of the company was a good investment and that the proposed exchange was a proper and safe one from that viewpoint.

Our conclusion, after an extended consideration of the record, is that the findings of the court in the respects stated are fully supported by the evidence, at least not clearly against the evidence, and must therefore be sustained. The evidence makes it clear that both plaintiffs and their attorneys were informed of the facts showing the general financial condition of the corporation; that it had been operating at a loss; had been obliged to borrow money to meet its maturing obligations, and in addition thereto had secured the bank credit of $20,000.

The investigation made by plaintiffs was under way for some six weeks before the deal was closed, and every opportunity seems to have been afforded by the officers of the company to make the investigation as full and complete as they wished. A financial statement of the company was under preparation at the time which would have shown in detail the debts and obligations of the company, and plaintiffs and their attorneys were advised that it would be completed soon. Yet no subsequent inquiry for it was made, and the transaction was closed without knowing its contents. The books

of the company were open to investigation, and inquiries were made by the attorney of the secretary in reference to the company affairs. It is true that there was some puffing of the company and its future prospects, but those matters are not subject to classification as representations of facts which may be relied upon in such cases. What the future will bring forth for a business venture of the kind is always more or less problematical and guesses or prediction thereof, though they fail of realization, are not actionable. Dunnell, Minn. Dig. and 1916 Supp. § 3827. Those representations, however, are not here relied upon by plaintiffs.

The main contention of counsel is that there was fraudulent concealment of material facts, particularly by the manager, to whom plaintiffs were referred for definite information by defendant Merrill Bartlett. No doubt defendants are responsible for any false or fraudulent representations made by the manager. Bartlett had referred the attorney to him, with the statement that he was in the management of the company; that the books and papers were there; that he would give all information desired by plaintiffs. But, although responsible for any false or affirmative misstatement made by him, manifestly they are not responsible for his failure to volunteer information or failure to speak out upon matters not inquired about. He knew the attorney was investigating the conditions of the company in .connection with the proposed transaction, and the record furnishes no evidence that he falsely gave, in response to questions, any untrue statements or representations concerning matters under inquiry. The finding that there was no fraudulent concealment of material facts either by him or Bartlett is fully supported by the evidence.

And we conclude the discussion of the evidence. We are not required, in affirming findings of the trial court, to demonstrate their correctness. It is sufficient that we have examined the record as a whole and find the evidence not clearly against them. Barnum v. Jefferson, 109 Minn. 1, 122 N. W. 453. That plaintiffs, in finally entering into the transaction, relied upon the information gained by their attorney, and the advice given by him, is fully shown by the evidence. And, since plaintiffs relied upon the knowledge so

acquired, they cannot shift responsibility for their failure to gain more extended information, if there was in fact any failure in that respect. Meland v. Youngberg, 124 Minn. 446, 145 N. W. 167, Ann. Cas. 1915B, 775.

2. The assignments challenging the rulings on evidence present no question of serious importance. We have examined them all with the result that no error is shown for which a new trial should be granted.

Order affirmed.