ARTHUR E. HATCH v. APOLONIA KULICK AND ANOTHER.[1]

December 5, 1941.

No. 32,812.

[1]Reported in 1 N. W. (2d) 359.

*Katzmarek & Berg* and *McMeekin & Quinn,* for appellants.
*Robert J. Phillips,* for respondent.

Stone, Justice.

In the early summer of 1938, defendants completed a new service garage and gasoline station in Little Falls. They had operated the station themselves for some two months when, in response to their newspaper advertisement, plaintiff opened negotiations which resulted in his taking over the property under lease for one year from November 1, 1938. The rent was $1,200, $75 monthly for the first six and $125 monthly for the last six months. After occupying the premises for nine months and paying the rent, plaintiff quit, claiming that he had been inveigled into the lease by the fraudulent misrepresentations of defendants. This lawsuit followed.

Plaintiff's assertion is that in order to induce him to take over the station defendants grossly and fraudulently exaggerated the volume of their business. The evidence made the issue of fraud one of fact.

It is characteristic of fraud inducing a contract that the victim ordinarily has an election of remedies. A contract so induced is voidable. The victim may affirm and, keeping what he has received, sue at law for what damage he has sustained by reason of the fraud. Or he may, in equity or by his own act, rescind the tainted contract and, returning what he has received, recover all he has parted with under the contract. I. L. Corse & Co. v. Minnesota Grain Co. 94 Minn. 331, 102 N. W. 728.

Where the victim rescinds, he is entitled to no damages, save in the sense that any recovery by action at law is loosely termed "damages." Rescission abolishes the contract and all its incidents. The only residual importance of both contract and the tort of inducing deceit is as evidence. What remains is a legally im-

posed obligation of the parties, each to the other, to restore the *status quo ante*.[2] In result, the victim is not damaged by the other party's wrong. He escapes scatheless by rescinding and recovering not damages (*i. e.*, compensation for wrong) but simply that with which he parted by reason of the contract. Kirby v. Dean, 159 Minn. 451, 199 N. W. 174; Scheer v. F. P. Harbaugh Co. 165 Minn. 54, 205 N. W. 626.

The jury was instructed that "the measure of damages in this case is the direct damage for fraud which induces a contract—is the difference in value between what the party defrauded parted with and what he received. In addition to this, the party defrauded may recover consequential damages flowing naturally and proximately from the breach." That was error. It was a statement of the measure of recovery for deceit and not for rescission. 3 Dunnell, Dig. § 3841, p. 304.

The pleadings did give this action the appearance of one to recover damages for deceit. But the facts make it one in rescission. That is now recognized by counsel. Failure to try the case accordingly was the cause of reversible error.

■ Pursuing the erroneous theory of trial, evidence went in concerning the value of plaintiff's services while he operated the station, and of his receipts and disbursements during that period. Upon this evidence, the jury was instructed that as damages to "reasonably and properly compensate him for what he has lost"

---

[2] That obligation is based neither on the contract nor on the tort of deceit. It is imposed by law to prevent unconscionable enrichment of one at the expense of another. Concerning the measure of recovery, it is said to be the rule that "if the defendant was tortious in his acquisition of the benefit he is required to pay for what the other has lost although that is more than the recipient benefited." Restatement, Restitution, § 149, p. 596. That is a departure from the earlier idea (see Burleson v. Langdon, 174 Minn. 264, 219 N. W. 155) that the measure of recovery in quasi contract should in all cases be limited to the value received by the defendant. Keener, Quasi-Contracts, pp. 200-202. Plaintiff here did not lose his services, performed not for defendants but in his own business. His whole loss, if any, was due to a rental value less than predicted by defendant's representations.

the plaintiff could be awarded the sum by which his disbursements exceeded receipts, plus a compensation of $100 or $150 per month for his services.

The instruction permitted computation of plaintiff's recovery on the basis of what he had a right to expect in profit from his own business. The evidence, admitted over defendants' objection, went to the difference between what plaintiff might reasonably have expected and what he actually received as profits.

This course was error. The plaintiff having rescinded, proper computation of his recovery required consideration of use of the leased premises as a business unit. For that use the parties bargained. The value thereof for the time of his occupancy is what plaintiff received. The money paid in rent is what he parted with. He was entitled to recover that sum, less credit for what he received, which was the reasonable value of the use. Allen v. Talbot, 170 Mich. 664, 137 N. W. 97; Hannah. v. Steinman, 159 Cal. 142, 112 P. 1094; J. C. Penney Co. v. Schulte Real Estate Co. Inc. 292 Mass. 42, 197 N. E. 458.

No enterprise is likely to profit under lax or incompetent management. Especially is that true in a field as highly competitive as that of the ubiquitous automobile service station. What plaintiff paid in rent is admitted. The effort at the trial should have been to determine the reasonable value of the use he got. That inquiry is objective. It is concerned with plaintiff's actual profit during the determinative period only so far as, in the discretion of the trial court, profit or loss may aid objective inquiry, and relevance will disappear in proportion as the result is referable to mischance or mismanagement. Cf. Foster v. Landon, 71 Minn. 494, 74 N. W. 281.

Value of the use of a business unit such as this station depends upon its productivity in terms of profit. Quality of equipment, location, and established clientele should be reflected in the value of its use. But actual profit or loss will ordinarily result largely from additional factors, chief among them the personal ability of the operator as manager and the potency of competition. So, to

determine value of the use of this station by giving controlling weight to plaintiff's actual profit or loss would be to hold defendants for variations in extraneous factors which were beyond their responsibility in this action. Weinhagen v. Hayes, 174 Wis. 233, 178 N. W. 780, 183 N. W. 162, 187 N. W. 756.

■ There is a subsidiary error. He who claims to have been inveigled into a contract by fraud and therefore desires to rescind must act promptly. Any unreasonable delay after discovery of the fraud ordinarily bars rescission. There is evidence that plaintiff learned of the fraud in January 1939. Plaintiff makes testimonial denial, but the issue was for the jury. Defendants' request that it be submitted was refused. That was error. Restatement, Contracts, § 484; Everson v. Owens Mfg. Co. 145 Minn. 199, 176 N. W. 505; O'Neil v. Davidson, 147 Minn. 240, 180 N. W. 102; Shell Petroleum Corp. v. Anderson, 191 Minn. 275, 253 N. W. 885.

In default of a settlement there must be a new trial, but there is no reason why the issue of fraud should again be litigated. That will be considered settled in favor of plaintiff. The only issues remaining for decision will be (1) whether plaintiff's rescission was made with reasonable promptness after discovery of the fraud, and, if that question be resolved for plaintiff, (2) the amount of his recovery.

Order reversed.